UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LABORERS' INTERNATIONAL UNION OF NORTH
  AMERICA LOCAL 91,
RICHARD PALLADINO, as Trustee of the Laborers'
  International Union of North America, Local No. 91
  Welfare Fund and the Laborers' International Union
  of North America, Local 91 Pension Fund,
MARIO NERI, as Trustee of the Laborers' International
  Union of North America, Local No. 91 Welfare Fund
  and the Laborers' International Union of North America
  Local 91 Pension Fund,
RANDY PALLATINO, as Trustee of the Laborers'
  International Union of North America, Local No. 91
  Welfare Fund and the Laborers' International Union of
  North America Local 91 Pension Fund,
DOUGLAS MAY, as Trustee of the Laborers' International
  Union of North America, Local No. 91 Welfare Fund
  and the Laborers' International Union of North America
  Local 91 Pension Fund,
RICHARD PALLATINO, as Trustee of the Laborers'
  International Union of North America, Local No. 91
  Education and Training Fund,
MARIO NERI, as Trustee of the Laborers' International
  Union of North America, Local No. 91 Education and
  Training Fund,
WILLIAM GRACE, as Trustee of the Laborers' International
  Union of North America, Local No. 91 Education and
  Training Fund,
ANGELO MASSARO, as Trustee of the Laborers'
  International Union of North America, Local No. 91
  Education and Training Fund, and
DOUGLAS MAY, as Trustee of the Laborers' International
  Union of North America, Local No. 91 Education and
  Training Fund,

                     Plaintiffs,
        v.

INSULATION COATINGS & CONSULTANTS LLC, and
CHARLES SORCE,
                  Defendants.
_____

REPORT
and
RECOMMENDATION

20-CV-1586-JLS-LGF

APPEARANCES:          LIPSITZ GREEN SCIME CAMBRIA LLP
                      Attorneys for Plaintiffs
                      JOSEPH LEON GUZA, and
                      ROBERT L. BOREANAZ, of Counsel
                      42 Delaware Avenue
                      Suite 120
                      Buffalo, New York  14202


## JURISDICTION

This case was referred to the undersigned by Honorable John L. Sinatra, Jr. on April 3, 2023, for a report and recommendation on damages to be awarded in connection with the entry of a default judgment (Dkt. 10).


## BACKGROUND and FACTS[1]

On October 28, 2020, Plaintiffs commenced this action pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1145, as well as Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Plaintiffs include Laborers' International Union of North America, Local No. 91 ("the Union"), the Trustees of the Union's Welfare Fund and Pension Fund, and the Trustees of the Union's Educational and Training Fund ("the Trustees") (together, "Plaintiffs").  Sued as Defendants are Insulation Coatings and Consultants LLC ("ICC"), and Charles Sorce ("Sorce"), ICC's controlling officer and managing agent.  Plaintiffs alleged that Defendants ICC and ICC's controlling officer and management agent Sorce (together, "Defendants"), breached collective bargaining agreements and trust agreements by failing to make contributions to various employee benefits funds for the period January 1, 2015 through December 31, 2019.

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

According to Affidavits of Service filed on November 3, 2020 (Dkt. 3) and December 8, 2020 (Dkt. 4), summons and the Complaint were respectively served on ICC on October 30,2020, and Sorce on November 16, 2020.  To date, neither ICC nor Sorce has appeared in this action.  Upon motions by Plaintiffs, Dkts. 5 and 6, default was entered by the Clerk of Court on December 17, 2020 (Dkt. 7), and on December 18, 2020, Plaintiffs moved for default judgment (Dkt. 8).

In a Decision and Order filed April 3, 2023 (Dkt. 10) ("the D&O"), District Judge Sinatra granted Plaintiffs' motion for default judgment.  District Judge Sinatra also observed that although Plaintiff seek damages for unpaid contributions and deductions from January 1, 2015 through December 31, 2019, the portions of the CBAs Plaintiffs submitted in support were in effect from 2015 to 2018 ("first CBA") and 2018 to 2023 ("second CBA") ("the CBAs").  *Id*. at 12 (citing Dkt. 1-1 at 1-13, and 1-1 at 14-24).  The first CBA includes a signature page signed by Sorce as ICC's owner, but the second CBA does not.  Judge Sinatra thus found Plaintiffs failed to adequately support the allegations that ICC was a party to the second CBA, which, together with the first CBA, covers the entire period relevant to Plaintiffs' claims.  *Id*. at 12-13.  Further, Judge Sinatra found that portions of the Trust Agreements ("the Trust Agreements") submitted by Plaintiffs to demonstrate such agreements classify unpaid employer contributions as trust assets were not in effect until August 5, 2015, and no other evidence in the record establishes the unpaid employer contributions were classified as trust assets prior to that date.  *Id*. at 13.  Because there then was an insufficient basis to assess damages, Judge Sinatra referred the matter to the undersigned for a report and recommendation on Plaintiffs' damages.  D&O at 13 and Text Order dated April 3, 2023 (Dkt. 11).

Accordingly, by Text Order entered April 21, 2003 (Dkt. 12), the undersigned established June 20, 2023 as the deadline for Plaintiffs to file written submissions in support of Plaintiff's damages claims (Dkt. 12), which, based on Plaintiffs' unchallenged motion (Dkt. 12), on June 23, 2023 was extended by Text Order to August 4, 2023. (Dkt. 14). On August 3, 2023, Plaintiffs filed the Attorney Affidavit [of Robert L. Boreanaz, Esq.][2] Regarding Damages Pursuant to Court Order (Dkt. 15) ("Boreanaz Affidavit"), attaching the Independent Accountant's Report on Applying Agreed-Upon Procedures as exhibit A (Dkt. 15-1) ("Accountant's Report" or "Auditor's Report"), and the Auditor Affidavit [of David Arcara] Regarding Damages Pursuant to Court Order (Dkt. 15-2) ("Arcara Affidavit"), with exhibit A (Dkt. 15-3) ("Arcara Affidavit Exh. A"). Because Plaintiffs' written submissions filed August 4, 2023, did not include the missing documentation observed by Judge Sinatra in the D&O, an e-mail to Plaintiffs' counsel dated September 7, 2023 ("the September 7, 2023 e-mail"), requested the documentation, as well as clarification on several matters including, *inter alia*, interest on Plaintiffs' damages to be awarded and time records for the attorney fees and costs Plaintiff seek to be awarded.

On September 18, 2023, Plaintiffs submitted the Attorney Affirmation [of Robert L. Boreanaz, Esq.] (Dkt. 16) ("Boreanaz Affirmation"), with exhibits A through E (Dkt. 16-1 through 16-6) ("Plaintiffs' Supplemental Exh(s). __"), to respond to the September 7, 2023 e-mail. Included in Plaintiffs' Supplemental Exhibits is a copy of the Trust Agreement in effect as of August 5, 2015, Plaintiffs' Supplemental Exh. B, thereby satisfying that requirement stated in the D&O. Missing from the Boreanaz Affirmation

---

[2] Unless otherwise indicated, all bracketed material has been added.

and Plaintiffs' Supplemental Exhibits, however, were responses to two items in the

September 7, 2023 e-mail including the signature page for the second CBA, which

Judge Sinatra also observed was missing, D&O at 12-13, as well an explanation for the

apparent discrepancy in the Auditor's Report regarding the number of underreported

hours for which Plaintiffs seek damages in this action, an item specifically requested in

the September 7, 2023 e-mail.  On October 4, 2023, in response to the undersigned's

telephonic communication to Plaintiffs' counsel requesting supplemental information

concerning those issues, Plaintiffs filed the Supplemental Attorney Affirmation of Robert

L. Boreanaz, Esq. (Dkt. 17) ("Supplemental Boreanaz Affirmation"), attaching exhibit A

(Dkt. 17-1).

Plaintiffs seek as damages for the period January 1, 2015 through December 31,

2019,[3] delinquent employee benefit contributions to three ERISA funds including the

Welfare Fund, the Pension Fund, and the Education and Training Fund ("the ERISA

Funds").  For the same period, Plaintiffs also seek unremitted union membership dues

and organizing assessments (together, "the unremitted union dues"), as well as

unremitted employee contributions to the non-ERISA funds established pursuant to the

CBAs including the Laborers Local # 91 Laborers-Employers Cooperative and

Education Trust ("LECET"), the Laborers Local #91Political Action Fund ("LPA"), the

Laborers' Local #91 Scholarship Fund ("Scholarship Fund"), the New York State

Laborer-Employers Cooperation and Education Trust Fund ("NYS LECET"), New York

---

[3] Although Plaintiffs refer to the period for which they seek to recover delinquent fund contributions and unremitted union dues payments as commencing January 1, 2015, *see, e.g.*, Boreanaz Affidavit ¶ 10, the first CBA was not in effect until April 1, 2015.  First CBA (Dkt. 1-1) at 1.  Plaintiffs' failure to explain the discrepancy in dates is nevertheless irrelevant as Defendants first failed to make the required contributions and payments in June 2015, *i.e.*, after the first CBA went into effect.

State Laborers' Health & Safety Fund ("NYS Health & Safety"), and the Building Industry Employer's Association of Niagara County, New York, Inc. Construction Industry Fund ("BIEA Fund") (together, "the LMRA Funds").  Plaintiffs seek interest on such damages, as well as liquidated damages.

## DISCUSSION

As stated, this case is before the undersigned for a report and recommendation on the damages and costs to be awarded Plaintiffs in connection with the default judgment entered on April 3, 2023 (Dkt. 10).

## 1.    Documentation

Preliminarily, the court addresses the two remaining items requested in the September 7, 2023 e-mail, specifically, the signature page for the second CBA, and an explanation for a discrepancy of 38 hours in the Accountant's Report of the number of underreported hours for which Plaintiffs seek damages in this action.  Insofar as the second CBA does not include a signature page signed by Sorce as ICC's owner, Boreanaz avers that his client has been unable to locate the signature page for the second CBA, but that ICC's continued compliance with the provisions of the second CBA after the expiration of the period covered by the first CBA, *i.e.*, March 31, 2018, including making the required benefit contributions into 2019, establish Defendants' intention to remain bound to and comply with the second CBA's terms.  Supplemental Boreanaz Affirmation ¶ 4.  Despite the absence of the relevant signature page, ICC's partial performance in accordance with the second CBA weighs heavily in favor of the second CBA's formation for the relevant 2018-2023 period.

In particular, a collective bargaining agreement is construed according to contract law. *See Marcic v. Reinauer Transp. Companies*, 397 F.3d 120, 131 (2d Cir. 2005) (observing a collective bargaining agreement is construed according to contract law). As "ERISA federal common law is largely informed by state law principles . . . [w]e apply familiar rules of contract interpretation in reading an ERISA plan." *Massaro v. Palladino*, 19 F.4th 197, 210 (2d Cir. 2021) (quoting *Lifson v. INA Life Ins. Co. of N.Y.*, 333 F.3d 349, 352–53 (2d Cir. 2003)). New York contract law provides that "[p]artial performance by one party and the acceptance of such performance by another can satisfy" the requirement that there be an agreement. *Kimm v. Kyu Sung Cho*, 706 Fed.Appx. 1, 2 (2d Cir. 2017). This is true even in the absence of a written, executed contract. *See Bed Bath & Beyond Inc. v. IBEX Constr., LLC*, 860 N.Y.S.2d 107, 109 (1st Dep't 2008) ("[T]he record demonstrates that by moving forward with the project even in the absence of the fully executed construction agreement, IBEX manifested its intent to be bound by the [letter of intent]."); *T. Moriarty & Son v. Case Contracting Ltd.*, 731 N.Y.S.2d 618, 619 (1st Dep't 2001) ("Plaintiff's partial performance of the agreed upon work, accepted by defendant Case without objection, as well as written confirmation of the subject subcontract objectively manifest the parties' intent to be contractually bound[.]"). Accordingly, despite the absence of a page bearing Sorce's signature for the second CBA, ICC's continued partial performance of the second CBA establishes that ICC was a party to the second CBA during the period relevant to this action, *i.e.*, June 1, 2015 through December 31, 2019.

As regards an apparent discrepancy between the March 11, 2020 cover letter that accompanied the Accountant's Report, Arcara Affidavit Exh. A (Dkt. 15-3), showing

2,148.50 underreported hours worked, such number is not listed on the accompanying spreadsheet showing the calculation of interest and liquidated damages ("damages spreadsheet"), *id*. at 6, which shows 2,186.5 underreported hours, and the discrepancy is attributed to the fact that some hours were overtime hours compensated at "time and one-half," referencing the damages spreadsheet.  Boreanaz Affirmation ¶ 27; Boreanaz Supplemental Affirmation ¶ 3.  Although not a wholly satisfactory explanation, the court's review of the damages spreadsheet shows the 2,186.5 hours listed as underreported is supported by another spreadsheet, *id*. at 7-10 ("hours worked spreadsheet"), listing the number of hours worked by each employee who performed work during the relevant period for which the required dues and various employee benefits funds deductions were not made, which total 2,186.5.  *Id*.  The court thus disregards the reference to 2,148.5 underreported hours as it appears in the March 11, 2020 cover letter from Plaintiffs' accountants as such hours, although undefined in the record, are neither relevant nor necessary to the court's calculation of damages.

**2.     Damages**

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974), and Fed. R. Civ. P. 8(d)).  If damages cannot be determined either by mathematical calculation or liquidated as of the default, the plaintiff generally must establish the damages in an evidentiary proceeding where the defendant has the opportunity to challenge the amount sought.  *Id*. (citing *Flacks*, 504 F.2d at 707).  Where, however, detailed affidavits and

documentary evidence demonstrate an adequate basis for the requested damages, the court is not required to conduct an evidentiary hearing.  *Fustok v. ContiCommodity Services, Inc.*, 783 F.2d 38, 20 (2d Cir. 1989) (citing Fed. R. Civ. P. 55(b)(2)).

"'In an ERISA action brought by a fiduciary for or on behalf of a benefit plan to enforce the rights under Section 1145, the statute specifies the damages to be awarded when 'judgment in favor of the plan is awarded.'"  *Buffalo Laborers Welfare Fund v. DiPizio Construction Company, Inc.*, 2018 WL 11265028, at *2 (W.D.N.Y. Nov. 9, 2018) (quoting *Bernhard v. Cent. Parking Sys. of New York, Inc.*, 101 F.Supp.3d 213, 214 (E.D.N.Y. 2015) (quoting 29 U.S.C. § 1132(g)(2))).  Specifically, ERISA § 502(g)(2) provides that the court shall award as damages

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

"Hence, there is 'a mandatory right to interest, liquidated damages, and attorney's fees in any case in which a judgment in favor of the plan is awarded.'"  *International Union of Painters & Allied Trades, District Council No. 4 v. J.A.C. Glazing, Inc.*, 2022 WL 3334192, at *3 (W.D.N.Y. June 7, 2022) (quoting *Buffalo Laborers Welfare Fund*, 2018 WL 11265028, at *2), *adopted by* 2022 WL 2663467 (W.D.N.Y. July 11, 2022).  Section 1132(g)(2) further "'provides for a double interest payment or alternative liquidated

damages to compensate a multiemployer benefit fund plan for costs incurred in connection with delinquencies.'" *Buffalo Laborers Welfare Fund*, 2018 WL 11265028, at * 2 (quoting *DeVito v. Hempstead China Shop, Inc*., 831 F.Supp. 1037, 1040 (E.D.N.Y. 1993)).

In the instant case, given the default judgment entered on April 3, 2023, in favor of the benefit funds, Plaintiffs are entitled to damages pursuant to 29 U.S.C. § 1132(g)(2).  As relevant, both the CBAs and Trust Agreements provide for interest on unpaid contributions and union dues at the simple rate of 15% per annum, as well as for liquidated damages calculated as 10% of the unpaid contribution amounts.  *See* Complaint Exhs. A (Dkt. 1-1) at 10, and C (Dkt. 1-3) at 3 (specifying interest on delinquent employee benefits funds shall be at 15% per annum).  ERISA provides for the payment of "interest on the unpaid contributions . . . [at] the rate provided under the plan."  29 U.S.C. § 1132(g)(2).  The unremitted benefit funds contributions for the Welfare, Pension, and Education and Training Funds, the union dues, and the LMRA Funds are subject to 15% per annum simple interest, and 10% liquidated damages.[4]

Although Plaintiffs assert they are seeking, pursuant to 29 U.S.C. § 1132(g)(2)(ii), the additional 10% in liquidated damages provided for by the CBAs and Trust Agreements, § 1132(g)(2)(C) provides for Plaintiffs to recover the greater of "interest on unpaid contribution," (hence, double-interest), or the liquidated damages provided for by the plan, not to exceed 20% of the unpaid contributions.  29 U.S.C. § 1132(g)(2)(C)(i)

---

[4] The court notes that had the CBAs not specified the interest rate and liquidated damages for unremitted union dues and delinquent contributions to non-ERISA Funds, the court would have had the discretion whether to award such interest and liquidated damages, and if awarded, the interest rate would have been set at the New York statutory rate of 9% per annum.  *See Trustees of Local 7 Tile Industry Welfare Fund v. All Flooring Solutions, LLC*, 2020 WL 9814088, at * 10 (E.D.N.Y. Feb. 12, 2020) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1161 (2d Cir. 1991)), and N.Y. Civ. Prac. L. & R. § 5004.

and (ii).  This provision applies "only to actions by fiduciaries who bring an action to collect delinquent contributions."  *Diduck v. Kaszycki & Sons Contractors, Inc.*, 774 F.Supp. 808, 814 (S.D.N.Y. 1991) (disallowing recovery of double interest or liquidated damages in action by plan participant alleging fiduciary breach), *aff'd in part, rev'd in part*, 974 F.2d 270, 285 (2d Cir. 1992).  In the instant case, because the CBAs and Trust Agreements provide for 10% liquidated damages, the amounts of such damages were eclipsed by the 15% interest rate otherwise applicable within eight months of Defendants' failure to collect or remit such amounts.  As such, because § 1132(g)(2)(C) requires awarding the greater of the interest on unpaid contributions, often referred to as "double interest," or the liquidated damages either pursuant to the governing agreements or federal or state law, here, the court must award double interest on all unpaid contributions in accordance with the statutory mandate.

As discussed below, the amounts claimed as damages are supported by the damages spreadsheet prepared by the auditors.[5]  *See Buffalo Laborers Welfare Fund*, 2018 WL 11265028, at * 2 (W.D.N.Y. Nov. 9, 2018) ("If adequately explained and credited by the Court, the opinion of an auditor is a sufficient basis for an award of a specific amount of damages." (quoting *Bricklayers Inc. & Welfare Fund v. Verse, Inc.*, 2013 WL 4883966, at *5 (E.D.N.Y. Sept. 11, 2013))).  The court finds the Accountant's Report, into which the data from the damages spreadsheet is incorporated, sufficiently supports the alleged delinquent contributions and union dues on which the court can

---

[5] Although the damages spreadsheet shows the unremitted dues and delinquent funds contributions for the period January 1, 2015 through December 31, 2019, the interest on such monies is calculated through December 31, 2020, and provides for a continuing per diem interest of $ 35.86 for each day subsequent to December 31, 2020.  *See* Dkt. 8-1 at 3.  *See also* Discussion, *infra*, at 13-14 & n. 6.

base the damages award, but adjusts the amount awarded by awarding double interest in place of the 10% liquidate damages sought by Plaintiffs.

### A.    Delinquent ERISA Funds Contributions

Plaintiffs seek an award for delinquent ERISA Funds contributions for the period January 1, 2015 through December 31, 2019 totaling $ 79,121.90.  This number includes delinquent ERISA Funds contributions of $ 32,323.49 for the Welfare Fund, $ 41,796.62 for the Pension Fund, and $ 5,001.79 for the Education and Training Fund for a total of $ 79,121.90 in delinquent ERISA Funds contributions.  Interest on these unpaid contributions, calculated at an annual rate of 15% through December 31, 2020, totals $ 34,039.11.  *See* Dkt. 8-7 at 3.  Instead of awarding the liquidated damages Plaintiffs calculate as 10% of the delinquent ERISA Funds contributions for a total of $ 7,912.19, *id*. at 4, the court awards the greater amount of an additional $ 34,039.11 in double interest pursuant to § 1132(g)(2)(C)(i).  The delinquent ERISA Funds contributions of $ 79,121.90, plus $ 34,039.11 annual interest at 15%, and double interest of $ 34,039.11 add up to $ 147,200.12 to be awarded for Plaintiffs' unpaid ERISA Funds contributions as of December 31, 2020.

### B.    Union Dues and Organizing Assessments

Plaintiffs seek unremitted union membership dues of $ 6,281.67 and organizing assessments of $ 546.63, for the period January 1, 2015 through December 31, 2019, for a total of $ 6,828.30.  Interest on the unremitted union membership dues and organizing assessments calculated at an annual rate of 15% through December 31, 2020, totals $ 2,960.73.  *See* Dkt. 8-7 at 3.  Instead of awarding the liquidated damages Plaintiffs calculated at 10% of the unremitted union membership dues and organizing

assessments of $ 682.83, *id*. at 4, the court awards the greater amount of an additional $ 2,960.73 in double interest in accordance with § 1132(g)(2)(C)(i).  The unremitted union membership dues and organizing assessments of $ 6,828.30, plus $ 2,960.73 annual interest at 15%, and double interest of $ 2,960.73 adds up to $ 12,749.76 to be awarded Plaintiffs as of December 31, 2020, for unpaid union dues and organizing assessments.

### C.    Delinquent LMRA Funds Contributions

Plaintiffs seek an award for delinquent contributions to the LMRA Funds for the period January 1, 2015 through December 31, 2019 totaling $ 1,311.95.  This number includes delinquent LMRA Funds contributions of $ 218.66 for the NYS LECET, $ 109.35 for the NYS Health and Safety Fund, $ 327.99 for the BIEA, $ 109.33 for the Scholarship Fund, $ 218.65 for the LECET, and $ 327.97 for the LPA.  Interest on these unpaid contributions, calculated at an annual rate of 15% through December 31, 2020, totals $ 567.79.  *See* Dkt. 8-7 at 3.  Instead of awarding the liquidated damages Plaintiffs calculated as 10% of the delinquent LMRA Funds contributions for $ 131.20, *id*. at 4, the court awards the greater amount of an additional $ 567.79 in double interest as required by § 1132(g)(2)(i).  *Id*.  The delinquent LMRA Funds contributions of $ 1,311.95, plus $ 567.79 annual interest at 15%, and $ 567.79 double interest adds up to $2,447.53 to be awarded Plaintiffs for delinquent LMRA Funds contributions as of December 31, 2020.

### D.    Continuing Annual Interest Accruing since December 31, 2020

Plaintiffs also seek continuing annual interest on the delinquent ERISA and LMRA Funds contributions and unremitted dues accruing since December 31, 2020, at

the annual interest rate of 15%, which Plaintiffs calculate as a per diem of $ 35.86 after

December 31, 2020.  Boreanaz Affirmation ¶ 15; Dkt. 8-4 at 3; Aronson Affidavit (Dkt. 8-

6) ¶ 13.  The court's calculation agrees.[6]  Because, however, Plaintiffs are, pursuant to

§ 1132(g)(2)(C)(i), entitled to double interest, the additional interest awarded to Plaintiff

should be $ 71.72 per day since December 31, 2020.  As of the date of this report and

recommendation, October 17, 2023, the additional interest is $ 73,156.74.

### E.    Total Damages

Based on the above, Plaintiffs are entitled to damages as follows:

| | | |
|---|---|---|
| Delinquent ERISA Funds Contributions | $ | 147,200.12 |
| Unpaid Union Dues and Organizing Fees | $ | 12,749.76 |
| Delinquent LMRA Funds Contributions | $ | 2,447.53 |
| Accruing Annual Interest (as of 10/17/2023) | $ | 73,156.74 |
| Total Damages as of 10/17/2023 | $ | 235,554.15 |

This amount will continue to increase by $71.72 for every day it is not paid.

### 3.    Costs

Plaintiffs seek an award of costs including attorney fees and audit fees incurred

in connection with this ERISA action.

### A.    Attorney Fees

ERISA provides for the collection of "reasonable attorney's fees and costs"

incurred in an action for unpaid contributions.  29 U.S.C. § 1132(g)(2)(D).  "In

determining what is a reasonable fee, the Second Circuit 'generally follow[s] the

---

[6] Specifically, the delinquent ERISA Funds contributions of $ 79,121.90, plus the unremitted dues of $ 6,828.30, and the delinquent LMRA Funds contributions of $ 1,311.95 add up to $ 87,262.15.  Multiplying $ 87,262.15 by interest of 15% per annum and dividing by 365 days in a year yields $ 35.86 per diem interest.

framework set forth by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 [ ]

(1983).'"  *Green v Torres*, 361 F3d 96, 98 (2d Cir 1997).  "Under *Hensley,* '[t]he starting

point for the determination of a reasonable fee is the calculation of the lodestar

amount.'"  *Id*. (quoting *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir.1999)).

"The lodestar method calculates a given attorney's fee by multiplying an attorney's

reasonable hourly rate by the number of hours that the attorney spent on the case."

*Fresno County Employees' Retirement Association v. Isaacson/Weaver Family Trust*,

925 F.3d 63, 67 n. 2 (2d Cir. 2019) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S.

542, 546 (2010)).  "'The prevailing party has the burden of producing contemporaneous

time records that specify, for each attorney, the date, the hours expended, and the

nature of the work done, so the court can audit the hours and determine whether they

were reasonably expended.'"  *International Union of Painters & Allied Trades, District*

*County No. 4 v. J.A.C. Glazing, Inc.*, 2022 WL 3334192, *4 (W.D.N.Y. June 7, 2022)

(quoting *Buffalo Laborers Welfare Fund*, 2018 WL 11265028, at * 4), *report and*

*recommendation adopted by* 2022 WL 2663467 (W.D.N.Y. July 11, 2022).  The final

determination of a reasonable attorney's fee awarded under § 1132(g) is within the

district judge's sound discretion.  *See Mendez v. Teachers Ins. And Annuity Ass'n and*

*College Retirement Equities Fund*, 982 F.2d 783, 789 (2d Cir. 1992) ("The calculation of

attorney's fees in an ERISA action will not be disturbed absent an abuse of discretion."

(quoting *Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058 (2d

Cir. 1989), *cert. denied,* 496 U.S. 905 (1990))).

    In the instant case, Plaintiff submitted itemized legal bills documenting the legal

work performed in this action by each attorney who worked on the case.  Boreanaz

Affirmation ¶ 16 and Exh. C (Dkt. 16-3).  The itemized legal bills show two attorneys from the law firm Lipsitz Green Scime Cambria LLP ("Lipsitz Green"), worked on the case, including Robert L. Boreanaz ("Boreanaz"), and Joseph L. Guza, Esq. ("Guza").  *Id*.  Boreanaz, a senior partner with Lipsitz Green and lead attorney for Plaintiffs in this action, was admitted to practice in the State of New York in 1990 and has 33 years of experience litigating ERISA actions.  Boreanaz Affirmation ¶¶ 1, 3, 17, 18.  Mr. Boreanaz's hourly rates were $ 265 in 2019 and $ 275 in 2020.  *Id*. ¶ 19.i and ii.  Guza, then a partner with Lipsitz Green, was admitted to practice in the State of New York in 2013 and has eight years of experience litigating ERISA actions.[7]  *Id*. ¶ 17.  Mr. Guza's hourly rate for work on this case in 2020 was $ 250.  *Id*. ¶ 19.ii.

"A reasonable hourly rate is a rate 'in line with ... prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'"  *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984), and citing *Chambless,* 885 F.2d at 1058–59).  "A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate."  *Id*., 450 F.3d at 96-97 (citing *Miele v. New York State Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir.1987)).  Here, when compared to comparable attorneys in similar matters, these rates are reasonable for Boreanaz and Guza.  *See*, *e.g.*, *Int'l Union of Painters & Allied Trades*, 2022 WL 3334192, at * 4 (finding Guza's hourly rate of $ 235 to $ 250 for work on ERISA case in 2019 and 2020 reasonable); *In re Eastman Kodak ERISA Litig.*, 213 F.Supp.3d 503, 509 (W.D.N.Y. 2016) (considering

---

[7] Mr. Guza departed Lisitz Green in April 2022.  Boreanaz Affirmation ¶ 17.

reasonable hourly rates in ERISA litigation of $ 325 for partners and senior counsel, $ 300 for associates, and $ 125 for paralegals); and *Dunda v. Aetna Life Ins. Co*., 2016 WL 4831962, at * 3 (W.D.N.Y. Sept. 15, 2016) (approving hourly rate of $ 320 for experienced ERISA attorney).

As for the number of hours expended, the court may reduce an attorney fee award in accordance with inadequate documentation, *Hensley*, 461 U.S. at 433, as well as for work that "is excessive, redundant or otherwise unnecessary." *Quarantino*, 166 F.3d at 425 (citing *Hensley*, 461 U.S. at 433-35). District courts within the Second Circuit sometimes exclude billings by "attorneys and clerks" who spend four or fewer hours on a matter on the premise that "such individuals are unlikely to have 'made a meaningful contribution to the case in such a brief period of time.'" *King v. JCS Enterprises, Inc*., 325 F.Supp.2d 162, 168-69 (E.D.N.Y. 2004) (quoting *Rodriguez v. McLoughlin*, 84 F.Supp.2d 417, 424 (S.D.N.Y. 1999), and citing *Shannon v. Fireman's Fund Ins. Co*., 156 F.Supp.2d 279, 299 n. 19 (S.D.N.Y. 2001)). Further, courts have permitted a percentage-based reduction from the number of hours submitted as a means of trimming excess time from the fee request to prevent the court from reviewing and ruling on each item for which reimbursement is requested. *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1993) (holding courts have assessed percentage-based cuts to hours as a practical means of "trimming fat" from an application for attorney fees)).

According to the itemized billing records submitted in the instant case, a total of 32.3 hours was spent on litigating this action, including 3.9 hours by Boreanaz and 28.4 hours by Guza, then a partner. Of the 3.9 hours spent by Boreanaz, .4 hours were in

2019 at the hourly rate of $ 265 for a total of $ 106, and 3.5 hours were in 2020 at the hourly rate of $ 275 for a total of $ 962.50. All 28.4 hours expended by Guza were at the hourly rate of $ 250 for a total of $ 7,100. The combined attorney fees requested produces a total lodestar figure of $ 8,168.50.[8] Although the billing records Plaintiffs submitted show Boreanaz only performed 3 ½ hours of work on this litigation, given Boreanaz is the senior partner assigned to the matter, the court declines to finds Boreanaz's contribution to the case was not meaningful, *King*, 325 F.Supp.2d at 168-69, and will not exclude these hours from the calculation of attorney fees to be awarded. Nor does the court find it necessary to apply an across-the-board percentage-based reduction to the number of hours worked to "trim the fat." *New York State Association for Retarded Children, Inc.*, 711 F.2d at 1147 (application of across-the-board percentage-based reduction to hours is discretionary). Accordingly, the court should award as attorney's fees the lodestar amount of $ 8,168.50.

Plaintiffs also seek to recover costs totaling $ 702.50 comprised of $ 400 for the filing fee, $ 274 for process service, and $ 28.50 for postage. Dkt.16-3 at 2. Boreanaz Affirmation ¶ 24. These costs, however, are not supported by any receipts. Although when calculating costs to be awarded, "district courts, in evaluating fee requests, 'need not, and indeed should not, become green-eyeshade accountants,'" the court may only award costs that are adequately supported by receipts or invoices. *See Fisher v. SD Protection, Inc.*, 948 F.3d 593, 601 (2d Cir. 2020) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011) (applicant for fees and costs must submit "appropriate documentation" to

---

[8] The court's review of the documentation submitted in support of the requested attorney fees, *i.e.*, copies of invoices showing the time spent by each attorney on the various tasks performed in connection with this litigation, Dkt. 16-3, when multiplied by the asserted hourly rates, confirms the accuracy of Plaintiffs' calculation of the requested attorney fees.

establish entitlement to the award)).  *See also AKF, Inc. v. Arnold Brothers Forest Products, Inc.*, 2023 WL 5310243, at * 6 (S.D.N.Y. 2023) (declining to award plaintiff $ 761.40 for process service fees unsupported by any documentation) (citing *Piedra v. Ecua Rest., Inc.*, 2018 WL 1136039, at * 20 (E.D.N.Y. Jan. 31, 2018) (rejecting expenses beyond filing fee because "the Court cannot simply accept at face value the other costs that plaintiff's counsel seeks, such as service of process and translator services, without additional supporting documentation for those costs")), *adopted by* 2023 WL 5302336 (S.D.N.Y. Aug. 17, 2023).  Nevertheless, Plaintiffs have provided an invoice dated December 15, 2020, listing disbursements including filing fees of $ 400, process service expense of $ 107, and postage of $ 28.50.  Dkt. 16-3 at 15.  An invoice dated December 18, 2020, shows an additional $ 167 was billed for process service expense.  Dkt. 16-3 at 17-18.  These invoices sufficiently document the expenses.  *See Dolores v. Titan Construction Services LLC*, 2021 WL 601655, at * 2 (S.D.N.Y. Jan. 22, 2021) (approving request for expenses for $ 400 filing fee based on judicial notice, and for services of process fees and mediation fees reflected in the law firm's billing records, but declining to approve additional expenses that were wholly undocumented).  The court also takes judicial notice the filing fee to commence a civil action in this court is $ 350, 28 U.S.C. § 1914(a), with an additional $ 50 administrative fee imposed by the Judicial Conference of the United States as of May 1, 2013.  Report of the Proceedings of the Judicial Conference of the United States, Sept. 11, 2012, at 13.  Plaintiffs thus are entitled to recover $ 400 for the cost of filing this action, $ 274 for service of process expenses, and $ 28 for postage, totaling $ 702 in expenses.

To summarize, Plaintiffs are entitled to recover $ 8,168.50 in attorney fees, and

$ 702 in costs, for a total of $ 8,870.50 in attorney fees and costs incurred in connection with this action.

### B.    Audit Fees

Plaintiffs seek to recover $ 5,120 for audit fees incurred in connection with work performed by Plaintiffs' accountants.  Boreanaz Affidavit ¶ 10 & Exh. A; Boreanaz Affirmation ¶ 26 & Exh. D.  "Audit fees are routinely recoverable in ERISA cases. Although 29 U.S.C. § 1132(g)(2) does not specifically mandate the payment of audit fees, several courts have often used the provision in § 1132(g)(2)(E) to award reasonable audit fees.  The provision allows a court to provide for such other legal or equitable relief as the court deems appropriate."  *Annuity, Welfare & Apprenticeship, Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers v. J & A Concrete Corp.*, 2013 WL 2467998, at * 8 (S.D.N.Y. June 6, 2013) (collecting cases). "'Requests for audit fees are generally determined by utilizing the same standards the court applies in awarding attorneys' fees.'"  *Int'l Ass'n of Sheet Metal, Air, Rail & Transportation Workers, Loc. Union No. 71 v. Lovejoy Metals, Inc.*, 495 F. Supp. 3d 174, 193 (W.D.N.Y. 2020) (quoting *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008)) (further quotation omitted). "'[A] party requesting audit fees must provide sufficient information to allow a court to determine the reasonableness of the fees requested.'"  *Id*. (quoting *Bd. of Trs. of the Laborers Pension Fund v. Casale Constr. Servs.*, 2018 WL 4935731, at *3 (N.D.N.Y. Oct. 11, 2018) (denying audit fees where plaintiffs provided no specifics about the type of work that was performed, preventing the court from determining whether the requested audit fees were reasonable)).

In the instant case, Plaintiffs submit in support of their request for audit fees the sworn Auditor Affidavit [of David Arcara] Regarding Damages Pursuant to Court Order (Dkt. 15-2) ("Arcara Affidavit").  Arcara is the Director at Arcara Lenda Eusanio & Stacey, CPAs, PC (formerly known as Arcara Zucarelli Lenda & Associates CPA, PC).  Arcara Affidavit ¶ 1.  Plaintiffs were originally billed for audit fees of $ 3,055 for audit services including an Accountant's Report detailing the number of hours worked by Union employees for which the required union dues were not collected nor the funds contributions deducted by Defendants.  *Id.* ¶ 11 & Exh. A (Dkt. 15-3) at 2, 6.  On the proposed order submitted in connection with the motion for default judgment, however, Plaintiffs indicated they were seeking $ 5,120 in auditing fees.  *See* Dkt. 8-9 at 4.  In response to the court's request, Mr. Boreanaz attributed the discrepancy to additional auditing services performed after the Accountant's Report was released on February 18, 2020.  Boreanaz Affirmation ¶ 26.  Plaintiffs also submit a Narrative of Audit Fees in Connection with the Payroll Audit for the period January 1, 2015 through December 31, 2019.  Boreanaz Affirmation Exh. D (Dkt. 16-4) ("Audit Fees Narrative").  No similar Audit Fees Narrative accompanies the Accountant's Report.

The court's review of the Audit Fees Narrative establishes that Plaintiffs were charged $ 3,990 in audit fees as of March 11, 2020, the date the Accountant's Report was distributed to the Union.  Arcara Affidavit Exh. A (Dkt. 15-3).  The $ 3,990 for audit fees is $ 935 more than the $ 3,055 asserted as audit fees in Arcara's March 11, 2020 cover letter accompanying the Accountant's Report to the Union ("March 11, 2020 cover letter").  Boreanaz Affidavit Exh. A (Dkt. 15-1) at 2.  A thorough review of the entries on the Audit Fees Narrative establishes the individual entries total $ 3,990 through March

11, 2020, including $ 3,087.50 through February 18, 2020, *i.e.*, the date of the Accountant's Report.  It is unclear why there is a discrepancy of $ 32.50 between the auditing fees charged as of February 18, 2020 and the $ 3,055 amount reported as the audit fees for the relevant period in Arcara's March 11, 2020 cover letter, and although the Audit Fees Narrative shows several individual fees entries for $ 32.50, none of the eight additional entries between February 18, 2020 and March 11, 2020 is for $ 32.50.

The Audit Fees Narrative does show costs incurred after March 11, 2020 of $ 1,130, including $ 1,050 for audit fees and $ 80 for expenses, specifically, milage for travel from Buffalo, New York to Sherman, New York.[9]  When added to the $ 3,990 of audit fees incurred as of March 11, 2020, the total is $ 5,120.  Further, despite there being multiple entries on the Audit Fees Narrative for the same date on several occasions, the description of the services provided for such entries establishes they entries were for different work performed in connection with the audit on those dates. *Compare*, *e.g.*, Audit Fees Narrative, two entries dated January 20, 2020 (the first description being "Correspondence with audit staff about preliminary audit findings and company records," and the second description being "Correspondence with company personnel about preliminary audit findings").  Accordingly, despite there being an apparent oversight in the amount of audit fees reflected in Arcara's March 11, 2020 cover letter, the total audit expenses request for $ 5,120 is sufficiently documented such that an award of audit expenses in the amount of $ 5,120 is appropriate.

---

[9] The court notes Sorce was served with the summons and complaint in Sherman, New York.  *See* Dkt. 4.

4.    **Post-Judgment Interest**

"The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whalen*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)).  "The post-judgment interest rate in ERISA actions is tied to the formula for calculation set forth in 28 U.S.C. § 1961(a), which provides that post-judgment interest 'shall be calculated form the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.'" *Trustees of Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds v. Cape Mount Heavy Construction & Associates, LLC*, 2023 WL 5830338, at * 9 (E.D.N.Y. July 31, 2023) (quoting 28 U.S.C. § 1961(a), and citing *Genworth Life and Health Ins. Co. v. Beverly*, 547 F.Supp.2d 185, 190 (N.D.N.Y. Feb. 28, 2008) ("a prevailing party [in an ERISA action] is entitled to post-judgment interest as a matter of right"), and *I.B.E.W. Local Union No. 488 Pension Fund v. Norland Elec., Inc.*, 2015 WL 3581011, at * 9 (D.Conn. June 5, 2015) ("Post-judgment interest is applicable in the ERISA context in the same manner in which it is awarded in other civil actions in which money damages are awarded.")), *adopted by* 2023 WL 5287218 (E.D.N.Y. Aug. 17, 2023).  Accordingly, Plaintiffs are entitled to post-judgment interest at the federal statutory rate as provided by 28 U.S.C. § 1961(a).

## **CONCLUSION**

Based on the foregoing, Plaintiffs should be awarded default damages for delinquent ERISA and LMRA Funds contributions and unremitted union dues and assessments with 15 % annual double interest through the date of this report and recommendation in the amount of $ 235,554.15, attorney fees and costs in the amount of $ 8,870.50 and $ 5,120 in audit fees, for a total of $ 249,544.65.  The amount of default damages continues to accrue per diem interest of $ 71.72 on the delinquent ERISA and LMRA Funds contributions and unremitted union dues and assessments. Clerk of Court thus should be directed to enter judgment in the amount of $ 249,544.65, plus double daily interest on $ 87,262.15, being the unpaid union dues and assessments, and the delinquent ERISA and LMRA Funds contributions, of $ 71.72 per diem from the date of this report and recommendation through the date judgment is entered.[10]  Following entry of judgment, interest will continue to accrue at the statutory rate set forth by 28 U.S.C. § 1961(a) until payment by Defendants.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:         October 17, 2023
                    Buffalo, New York

---

[10]  The 15% per diem interest is simple interest, *i.e.*, calculated on the principal amount due for delinquent contributions as of December 31, 2019 on the ERISA Ffunds of $ 79,121.90, delinquent contribution on the LMRA Funds of $ 1,311.95, and the unremitted union dues and organizing assessments of $ 6,828.36 for a total of $ 87,262.15.  Specifically, $ 87,262.15 X 15% ÷ 365 = $ 35.86 per diem interest.  Doubling the per diem interest produces $ 71.72 per diem interest calculated as $ 35.86 X 2.

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.


/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      October 17, 2023
            Buffalo, New York